1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   V.V.V. & SONS EDIBLE OILS LIMITED,        No. 2:14-cv-02961-DJC-CKD

12                     Plaintiff,

13          v.                                 ORDER

14   MEENAKSHI OVERSEAS LLC,

15                     Defendant.

16

17

18          This matter involves a trademark dispute over the mark IDHAYAM, an Indian

19   word for heart, in conjunction with the sale of sesame oil.  Defendant is a New Jersey

20   company that sells sesame oil under the IDHAYAM mark and also owns a federal

21   trademark registration for that mark.  Plaintiff, an Indian company that also sells

22   sesame oil under the IDHAYAM mark, claims priority of use in the mark, and seeks

23   cancellation of Defendant's registration and related relief on that basis.  Plaintiff has

24   moved for summary judgment on their claims for fraud in the procurement, trademark

25   infringement, and unfair competition under federal and state law.  Defendant has

26   cross-moved for summary judgment based on laches, arguing Plaintiff unreasonably

27   delayed filing suit after they became aware of Defendant's use of the mark,

28   prejudicing Defendant with their delay.

                                           1

1    Having considered the Parties' evidence and arguments, the Court finds that

2    Plaintiff did not unreasonably delay bringing their claims as the claims were largely

3    brought within the applicable statute of limitations period.  The Court also finds

4    Plaintiff did not cause Defendant any prejudice due to their delay.  Accordingly,

5    Defendant's cross-motion will be denied.  The Court further declines to award

6    summary judgment on Plaintiff's claims for fraud in the procurement, trademark

7    infringement, and unfair competition, as Plaintiff has not clearly established their

8    priority of use in the IDHAYAM mark.  Thus, Plaintiff's motion will also be denied.

9                                        **BACKGROUND**

10    Plaintiff V.V.V. & Sons Edible Oils Limited is an Indian company that sells food

11    products, specifically sesame (also known as gingelly) oil.  (Pl.'s Statement of

12    Undisputed Facts ("Pl.'s SUF") (ECF No. 133-4) ¶ 6.)  Plaintiff labels their sesame oil

13    with the mark "IDHAYAM"[1] and sells it throughout several countries, including the

14    United States.  (Id.)  Plaintiff's predecessor company, V.V. Vanniaperumal & Sons,

15    registered the IDHAYAM mark with the Indian Trademark Office in international class

16    29 under registration number 465063 ("063 Registration") in 1992.  (Id. ¶¶ 10, 12.)

17    That mark is currently in force.  (Id. ¶ 12.)  V.V. Vanniaperumal & Sons assigned their

18    rights in the 063 Registration to Plaintiff sometime between 2008 and 2009.[2]  (Pl.'s SUF

19    ¶ 29; Brooks Decl., Ex. 13 (ECF No. 133-2) at 18:22–20:24; Mandel Decl., Ex. 11 (ECF

20    No. 142-11).)  Plaintiff claims they have been "selling gingelly oil in the United States

21    marked with the IDHAYAM trademark since 1998, including tacking of the use by

22    Plaintiff's predecessor company."  (Pl.'s SUF ¶ 13.)

23    Defendant Meenakshi Overseas LLC is a New Jersey based company that also

24    sells Indian food products in the United States.  (Def.'s Statement of Undisputed Facts

25    ("Def.'s SUF") (ECF No. 146-2) ¶¶ 1, 3.)  Defendant is owned by Anil Gandhi ("Gandhi")

26

27    _____

[1] The term Idhayam is an Indian word for heart.  (Pl.'s SUF ¶ 7.)

28    [2] The Deed of Assignment is dated February 10, 2010, but states it took effect on January 5, 2008. (Mandel Decl., Ex. 11 (ECF No. 142-11).)

1  and his sister Meenaxi Gandhi.  (*Id.* ¶ 2.)  In January 2008, Gandhi began importing

2  sesame oil from India into the United States under an "IDHAYAM" mark.  (*Id.* ¶ 3.)

3  Gandhi attests that he chose the mark IDHAYAM because that mark was commonly

4  used in India for a wide variety of goods and services.  (Pl.'s SUF ¶ 21; Mandel Decl.,

5  Ex. 6 (ECF No. 142-6) at 38:3–39:24; Mandel Decl., Ex. 7 (ECF No. 142-7) at 13:3–11.)

6  The oil was manufactured in India and sold in the United States through Meenaxi

7  Enterprise, Inc., a company also owned by Gandhi and his sister.  (Def.'s SUF ¶¶ 3–4.)

8         On May 29, 2009, Gandhi filed an Intent to Use trademark application with the

9  United States Patent and Trademark Office ("USPTO") to register the mark IDHAYAM

10  for sesame oil.  (*Id.* ¶ 6.)  Before filing this application, Gandhi searched for evidence

11  in the United States of any use of the IDHAYAM mark, including visiting Indian Grocery

12  stores "all over" states including New Jersey, New York, Connecticut, and California,

13  but found none.  (Mandel Decl., Ex. 5 (ECF No. 142-5) at 86:13–87:12, 91:23–92:8,

14  99:24–103:7, 109:8–25; Mandel Decl., Ex. 6 at 44:16–45:3, 48:10–49:3; Mandel Decl.,

15  Ex. 7 at 10:17–19, 12:25–13:20.)  Gandhi also conducted a search of USPTO records

16  but found only an abandoned application for IDHAYAM that had been filed by an

17  entity named Ethnic Foods.  (Mandel Decl., Ex. 5 at 100:7–23; Mandel Decl., Ex. 6 at

18  44:16–45:3, 48:17–25; Mandel Decl., Ex. 7 at 13:13-20; Mandel Decl., Ex. 33 (ECF No.

19  142-33).)  Thus, when filing the Intent to Use application, Gandhi averred "that to the

20  best of his/her knowledge and belief no other person, firm, corporation, or association

21  has the right to use the mark in commerce, either in the identical form thereof or in

22  such near resemblance thereto as to be likely . . . ."  (Pl.'s SUF ¶ 17.)  He also averred

23  that he had a bona fide intent to use the mark in commerce.  (Brooks Decl., Ex. 11

24  (ECF No. 133-2).)

25         On November 17, 2009, Plaintiff filed an opposition to Defendant's trademark

26  application with the United States Trademark Trial and Appeal Board ("TTAB"),

27  requesting the USPTO refuse Gandhi's application for the IDHAYAM mark due to

28  Plaintiff's prior use of the IDHAYAM mark for sesame oil.  (Def.'s SUF ¶¶ 15–16; *see*

1    *also* Mandel Decl., Ex. 13 (ECF No. 142-13) at 4–5.)  Plaintiff argued that Gandhi's

2    IDHAYAM mark was likely to cause confusion with Plaintiff's mark, and his use of the

3    mark would "take advantage of [Plaintiff's] valuable brand and goodwill in the United

4    States." (Mandel Decl., Ex. 13 at 4.)  Plaintiff also alleged that Gandhi had "never

5    manufactured or marketed sesame oil products under the IDHAYAM brand in the

6    United States or anywhere." (*Id.*)  On December 28, 2009, Gandhi filed an answer in

7    the TTAB opposition proceeding denying Plaintiff's allegations, in particular Plaintiff's

8    allegation that he "never manufactured or marketed sesame oil products under the

9    IDHAYAM brand in the United States or elsewhere." (Def.'s SUF ¶ 17; Mandel Decl.,

10   Ex. 14 (ECF No. 142-14) at 3–6.)

11   　　　　On September 27, 2010, Plaintiff's counsel withdrew from the TTAB opposition

12   proceeding. (Def.'s SUF ¶ 20.)  Plaintiff was granted 30 days to appoint new counsel

13   or file a statement indicating they would represent themselves in the proceedings.

14   (*Id.*)  On November 15, 2010, the TTAB issued an order indicating no appearance or

15   other response had been received and ordered Plaintiff to show cause within 30 days

16   why default judgment should not be entered against them. (*Id.* ¶ 21.)  Plaintiff failed

17   to respond to that order. (*Id.* ¶ 22.)  Therefore, the TTAB entered a default judgment

18   with prejudice against Plaintiff on January 3, 2011. (*Id.*)

19   　　　　On June 21, 2011, Gandhi filed a Statement of Use for his trademark

20   application, stating the IDHAYAM mark had first been used in commerce on October

21   27, 2009. (Pl.'s SUF ¶ 23; Brooks Decl., Ex. 12 (ECF No. 133-2).)  As part of the

22   Statement of Use, Gandhi averred that "he/she believes the applicant to be the owner

23   of the trademark/service mark sought to be registered . . . ." (Pl.'s SUF ¶ 23.)  On

24   August 2, 2011, the USPTO issued federal registration number 4,006,654 ("654

25   Registration") to Gandhi for the IDHAYAM mark for sesame oil in international class

26   29. (Def.'s SUF ¶ 24.)  On December 7, 2011, Gandhi assigned his trademark rights in

27   the 654 Registration to Defendant. (*Id.* ¶ 25.)

28   ////

On July 31, 2012, Plaintiff filed a trademark application to register the mark IDHAYAM for edible oil products. (*Id.* ¶ 26.) On November 28, 2012, the USPTO issued an Office Action refusing the application due to a likelihood of confusion with Defendant's 654 Registration. (*Id.* ¶ 27.) Plaintiff did not respond to the USPTO's Office Action within the designated 6-month period. (*Id.* ¶ 28.) Consequently, the USPTO deemed Plaintiff's application abandoned as of July 9, 2013. (*Id.*)

On December 23, 2014, Plaintiff filed suit against Defendant, alleging the following causes of action in the operative First Amended Complaint: (1) unfair competition under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (2) federal dilution of a famous mark under section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); (3) common law trademark infringement; (4) California dilution under California Business and Professions Code section 14247; (5) California unfair competition under California Business and Professions Code section 17200, *et seq.*; and (6) declaratory judgment of invalidity based on fraud in the procurement, 15 U.S.C. § 1119.[3] (ECF No. 71.) On February 28, 2025, Plaintiff filed a Motion for Partial Summary Judgment, asking the Court to grant judgment in their favor on their fraud in the procurement, trademark infringement, and unfair competition claims.[4] (Mot. Summ. J. ("MSJ") (ECF No. 133-1).) Defendant opposed on March 18, 2025, and counter-moved for summary judgment on the basis of laches. (Opp'n & Cross-MSJ (ECF No. 146).) The Court held a hearing on May 1, 2025, with Kenneth Brooks appearing for Plaintiff, and Richard Mandel appearing for Defendant. The matter was submitted.

////

---

[3] Plaintiff previously brought claims against Defendant regarding three of Defendant's marks: (1) the 654 Registration; (2) federal trademark registration number 4,334,000 for IDHAYAM SOUTH INDIAN DELIGHT in international classes 29 and 30 registered on May 14, 2013 ("000 Registration"); and (3) federal trademark registration number 4,225,172 for IDHAYAM in international classes 29 and 30 registered on October 16, 2012 ("172 Registration"). (*See* ECF No. 1 ¶ 12.) However, the Court subsequently dismissed all claims concerning the 000 Registration and 172 Registration with prejudice. (*See* ECF No. 80; *see also* ECF Nos. 109, 117.) Thus, this case proceeds on Plaintiff's claims against Defendant concerning the 654 Registration only.

[4] The Parties have stipulated to dismissal of Plaintiff's federal and state law dilution claims. (ECF Nos. 136, 137.)

1

## SUMMARY JUDGMENT STANDARD

2        Summary judgment may be granted when the evidence shows that there is no

3    genuine issue as to any material fact and the moving party is entitled to a judgment as

4    a matter of law.  Fed. R. Civ. P. 56(a).  The principal purpose of summary judgment is

5    to dispose of factually unsupported claims or defenses.  *Celotex Corp. v. Catrett*, 477

6    U.S. 317, 325 (1986).  Therefore, the "threshold inquiry" is whether there are any

7    factual issues that could reasonably be resolved in favor of either party, or conversely,

8    whether the facts are so one-sided that one party must prevail as a matter of law.

9    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–52 (1986).

10        In a summary judgment motion, the moving party must inform the court of the

11    basis for the motion and identify the portion of the record which it believes

12    demonstrates the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at

13    323.  If the moving party meets its initial burden, the burden then shifts to the

14    opposing party, which must establish that there is a genuine issue of material fact.

15    *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986).  For the

16    opposing party to succeed and avoid summary judgment, they "must do more than

17    simply show that there is some metaphysical doubt as to the material facts."  *Id.* at 586.

18    Rather, the opposing party must produce enough evidence such that the specific facts

19    set forth by the nonmoving party, coupled with undisputed background or facts, are

20    such that a reasonable jury might return a verdict in their favor.  *T.W. Elec. Serv., Inc. v.*

21    *Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, for the

22    moving party to succeed, the court must conclude that no rational trier of fact could

23    find for the opposing party.  *Matsushita*, 475 U.S. at 587.  However, so as not to usurp

24    the role of the jury, "[c]redibility determinations, the weighing of the evidence, and the

25    drawing of legitimate inferences from the facts are jury functions," and so the court

26    draws all reasonable inferences and views all evidence in the light most favorable to

27    the opposing party.  *Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587–88.

28    ////

1    **DISCUSSION**

2    **I.    Defendant is Not Entitled to Summary Judgment on the Basis of Laches**

3    As a threshold matter, Defendant argues that Plaintiff's claims must be

4    dismissed in their entirety on the basis of laches as Plaintiff has known of Defendant's

5    use of the IDHAYAM mark since at least as early as November 2009, when Plaintiff

6    filed an opposition to Defendant's trademark application, but neglected to bring suit

7    until over five years later in December 2014, prejudicing Defendant both

8    economically and evidentiarily by this undue delay.  (Opp'n & Cross-MSJ at 7–13.)

9    Plaintiff argues, in turn, that any delay in bringing this action was not unreasonable as

10    Plaintiff was not aware that Defendant was actually using the IDHAYAM mark in

11    commerce until 2013 and filed suit soon thereafter.  (Reply & Opp'n Cross-MSJ (ECF

12    No. 151) at 2–10.)  Plaintiff also argues that, even if there was delay in bringing suit,

13    Defendant has not suffered any prejudice as a result.  (*Id.* at 11–12.)

14    "Laches is an equitable time limitation on a party's right to bring suit, resting on

15    the maxim that one who seeks the help of a court of equity must not sleep on his

16    rights."  *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002)

17    (internal citations and quotation marks omitted).  "Laches is a defense to both Lanham

18    Act claims (including trademark infringement and unfair competition) as well as to

19    California state law claims."  *Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180, 1186 (N.D.

20    Cal. 2015).  To evaluate the application of laches, courts apply a two-prong test.

21    *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 951 (9th Cir. 2001).  The first prong asks

22    whether the plaintiff unreasonably delayed filing suit, while the second prong asks

23    whether the defendant suffered prejudice as a result of the delay.  *Id.*

24    Here, the Court finds that Plaintiff did not unreasonably delay bringing all but

25    one of their claims, as the claims were brought within the applicable statute of

26    limitations period.  Further, although Plaintiff's claim for fraud in the procurement was

27    arguably unreasonably delayed, Defendant did not suffer any prejudice as a result of

28    that delay.  Thus, the Court will deny summary judgment on the basis of laches.

1    **A.    Unreasonable Delay**

2           To determine unreasonable delay, a court must first assess "the length of delay,

3    which is measured from the time the plaintiff knew or should have known about its

4    potential cause of action." *Jarrow*, 304 F.3d at 838.  Next, the court must "decide

5    whether the plaintiff's delay was reasonable" by determining whether the most

6    analogous state statute of limitations for that claim has expired.  *Id.*  "If the period has

7    not expired before suit was filed, there is a strong presumption against the laches

8    defense." *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 878 (9th

9    Cir. 2014).  "That presumption is reversed if the laches period expired before the suit

10   was filed." *Id.*  If the laches period expired before suit was filed, courts then apply the

11   factors listed in *E-Systems, Inc. v. Monitek, Inc.*, 720 F.2d 604 (9th Cir. 1983) to

12   determine whether the trademark owner's delay in filing suit was unreasonable and,

13   therefore, barred.  *Id.*  The *E-Systems* factors include: "(1) 'strength and value of

14   trademark rights asserted'; (2) 'plaintiff's diligence in enforcing mark'; (3) 'harm to

15   senior user if relief denied'; (4) 'good faith ignorance by junior user'; (5) 'competition

16   between senior and junior users'; and (6) 'extent of harm suffered by junior user

17   because of senior user's delay.'" *Pinkette Clothing, Inc. v. Cosmetic Warriors, Ltd.*, 894

18   F.3d 1015, 1025 (9th Cir. 2018) (quoting *E-Systems*, 720 F.2d at 607).

19          The Parties dispute when Plaintiff "knew or should have known" of their claims.

20   Defendant contends that Plaintiff knew of Defendant's intent to use the IDHAYAM

21   mark at least as early as November 2009 when they filed an opposition to Defendant's

22   trademark application.  (Opp'n & Cross-MSJ at 8–9; *see also* Def.'s SUF ¶ 14.)

23   Defendant argues that Plaintiff should have been aware Defendant was using the

24   IDHAYAM mark in commerce at that point because, in responding to Plaintiff's

25   opposition, Gandhi expressly denied Plaintiff's allegation that he had never marketed

26   sesame oil under the IDHAYAM mark in the United States.  (Opp'n & Cross-MSJ at 8–9;

27   *see also* Mandel Decl., Ex. 14 at 3.)  Plaintiff, however, argues that while their "earliest

28   knowledge of the use of the IDHAYAM trademark by was November 2009, it is

8

1  submitted that was the *constructive* use . . . [while the] first knowledge of use that

2  Plaintiff had of Defendant's use in *commerce* of the trademark IDHAYAM was in 2013."

3  (Reply & Opp'n MSJ at 5–6 (emphasis added); *see also* Brooks Decl., Ex. 13 at 125:9–

4  15 (deposition of Plaintiff's 30(b)(6) witness stating "the first instance of [Defendant's]

5  counterfeit sesame oil in the market came to our knowledge only in 2013").)

6      The Court finds that there is no clear evidence in the record that Plaintiff knew

7  Defendant was using the IDHAYAM mark in commerce as of November 2009.  (*See,*

8  *e.g.*, Def.'s SUF ¶ 18 (explaining that, while Plaintiff's chairman had allegedly

9  investigated whether Defendant was selling sesame oil under the IDHAYAM mark in

10  2009 by contacting resellers of sesame oil in the United States, he had no recollection

11  of these investigative efforts).)  The question, then, is whether Defendant's Intent to

12  Use application was sufficient by itself to trigger the "should have known" standard for

13  laches purposes.

14      The Court finds that it was not.  Defendant argues that at least one court has

15  held that the filing of an Intent to Use application alone is sufficient to trigger the

16  "should have known" standard.  (Opp'n & Cross-MSJ at 8 (citing *Pharmacia Corp. v.*

17  *Alcon Labs., Inc.*, 201 F. Supp. 2d 335, 383, 385 (D. N.J. 2002)).)  That out-of-circuit

18  opinion holds little weight here however, and Defendant does not point to, nor has

19  this Court found, a district court in this circuit that has adopted that approach.  *But see*

20  *Adidas Am., Inc. v. TRB Acquisitions LLC*, No. 3:15-cv-2113-SI, 2018 WL 4855484, at *5

21  & n.2 (D. Or. Oct. 5, 2018) (noting that, under *Pharmacia*, an Intent to Use application

22  might be sufficient to trigger laches but declining to decide whether "receipt of watch

23  notices [was] sufficient to put [p]laintiffs on notice to begin the laches period" because

24  the "parties did not thoroughly brief the issue for it to be decided at this time").

25      Further, in "order to establish a claim under the Lanham Act, a plaintiff must

26  show that defendant 'used [plaintiffs] trademark in commerce and that the use was

27  likely to confuse customers as to the source of the product.'"  *See, e.g., United Am.*

28  *Indus. v. Cumberland Packing Corp.*, No. CV-06-1833PHX-FJM, 2007 WL 38279, at *3

9

1    (D. Ariz. Jan 4, 2007) (quoting *Karl Storz Endoscopy Am., Inc. v. Surgical Techs., Inc.*,

2    285 F.3d 848, 853 (9th Cir. 2002)).  Therefore, Lanham Act claims are focused on

3    actual, not prospective, use in commerce.  While an Intent to Use application may

4    signal to a party that a mark will soon come into use, an application may be refused, or

5    abandoned, before the mark is ever used in commerce.  Thus, the Court finds the

6    operative question for laches purposes is when Plaintiff "knew or should have known"

7    of the mark's use in commerce.

8        Here, the Court finds that the "should have known" date was August 2, 2011,

9    when the 654 Registration was issued.  By that point, Gandhi had filed the Statement

10   of Use on June 21, 2011, in connection with his Intent to Use application for the

11   IDHAYAM mark indicating that that earliest use date was October 27, 2009, and that

12   the mark was actively in use in commerce.  (Brooks Decl., Ex. 12.)  Thus, by August 2,

13   2011, there was publicly available information that the mark was in use.  Further, the

14   "knew or should have known" standard allows a laches defense to be based on either

15   actual or constructive knowledge.  *Miller v. Glen Miller Productions, Inc.*, 454 F.3d 975,

16   980–81 (9th Cir. 2006).  Constructive knowledge is judged from an objective

17   reasonable person standard, and therefore, a trademark owner is chargeable with the

18   information it might have received had due inquiry been made.  *Id.* (plaintiff "knew, or

19   should reasonably have known" of defendant's activity); *see also Kling v. Hallmark*

20   *Cards Inc.*, 225 F.3d 1030, 1036 (9th Cir. 2000) (when laches is raised, the law charges

21   plaintiff with "such knowledge as he might have obtained upon inquiry, provided the

22   facts already known by him were such as to put upon a man of ordinary intelligence

23   the duty of inquiry").  Given that Plaintiff was aware of the Intent to Use application

24   prior to Defendant's August 2, 2011, 654 Registration, the Court finds Plaintiff

25   reasonably had a duty of inquiry and is assumed to have had constructive knowledge

26   of the IDHAYAM mark's use in commerce as of August 2, 2011.  *See Aguila Mgmt. LLC*

27   *v. Int'l Fruit Genetics LLC*, No. CV-19-00173-PHX-DJH, 2020 WL 736303, at *2–3 (D. Az.

28   Feb. 13, 2020) (finding laches triggered by registration of defendant's mark because

1    plaintiff was aware of defendant's Intent to Use application prior to registration of the

2    mark); *see also Pinkette*, 894 F.3d at 1025 ("[Appellee] should have known about its

3    claims no later than when [appellant's] registration issued in July 2010.").  This case

4    was then filed on December 23, 2014.

5         Having assessed the length of delay, the Court must next consider whether the

6    delay was reasonable in light of the time allotted by the analogous limitations period.

7    If Plaintiff's claims were "filed within the analogous state limitation period, the strong

8    presumption is that laches is inapplicable; if the claim is filed after the analogous

9    limitations period has expired, the presumption is that laches is a bar to suit."  *Jarrow*,

10   304 F.3d at 837 (collecting cases).  Here, Plaintiff bring claims for unfair competition,

11   trademark infringement, and fraud in the procurement.  The Parties debate the

12   applicable statute of limitations for Plaintiff's claims, arguing there "has been a

13   disagreement among courts as to whether California's four-year period for California

14   trademark infringement, three-year period for fraud, or two-year period for tort claims

15   is the proper state statute of limitations to borrow."  (Opp'n & Cross-MSJ at 7 (citing

16   *Fitbit*, 78 F. Supp. 3d at 1189–90).)

17        The Court finds the most closely analogous state-law limitations period for

18   Plaintiff's claims for trademark infringement and unfair competition are the four-year

19   limitations periods for trademark-related claims and unfair competition claims set

20   forth under California Code of Civil Procedure section 343 and California Business

21   and Professions Code section 17208.  *See* Cal. Code Civ. Proc. § 343; Cal. Bus. & Prof.

22   Code § 17208; *Internet Specialties W., Inc. v. Milon–DiGiorgio Enters., Inc.*, 559 F.3d

23   985, 990 n.2 (9th Cir. 2009) ("Neither party disputes the imputation of the four-year

24   limitations period from California trademark infringement law, and we agree that this

25   was the correct period to use."); *Miller*, 454 F.3d at 997 (explaining that California's

26   "statute of limitations for . . . state trademark infringement and/or dilution claims . . . is

27   four years"); *Pinkette*, 894 F.3d at 1025 (reiterating that the "most analogous state

28   statute of limitations" in a case involving claims for trademark infringement and

1   cancellation "is California's four-year statute of limitations for trademark infringement

2   actions").  Accordingly, this Court will follow the weight of authority in the Ninth Circuit

3   and hold that the statute of limitations for Plaintiff's unfair competition and trademark

4   infringement claims is four years.  Under the applicable four-year statute of limitations,

5   these claims were timely, as they were brought on December 23, 2014, within four

6   years of when the 654 Registration was issued on August 2, 2011.  Accordingly, there

7   is a presumption that these claims are not barred by laches.

8        Plaintiff's claim for fraud in the procurement presents a slightly different matter.

9   California imposes a three-year statute of limitations for fraud claims.  *See* Cal. Code

10  Civ. Proc. § 338(d); *see also Jarrow*, 304 F.3d at 838 (holding statute of limitations

11  period for Lanham Act false advertising claim was California's three-year period for

12  fraud).  Thus, Defendant is entitled to a presumption that Plaintiff's fraud in the

13  procurement claim, which sounds in fraud, is subject to laches, as it was brought

14  beyond the three-year statute of limitations period.[5]  Defendant does not address the

15  *E-Systems Factors* to conclusively demonstrate that Plaintiff's delay in bringing that

16  claim was unreasonable.  However, even if Defendant had, as discussed below, the

17  Court finds that Defendant has failed to show prejudice resulting from any delay.

18  ////

19  ////

20  ─────────────────────

21  [5] Plaintiff argues that there can be no laches defense against their fraudulent procurement claim
    because 15 U.S.C. § 1064 acts as a five-year statute of limitations on claims to cancel a trademark
    registration.  (*See* Reply & Opp'n Cross-MSJ at 2-3.)  However, as the Ninth Circuit has explained, there

22  is "no question that [section] 1064 is not a statute of limitations in the usual sense of barring an action
    entirely once a defined period expires."  *Pinkette*, 894 F.3d at 1023.  Rather, section 1064 acts as an

23  incontestability provision, which "limits the grounds on which cancellation may be sought."  *Id.*  Under
    that provision, "a petition brought within five years of registration (against a contestable mark) may

24  assert any ground that would have prevented registration in the first place–most commonly that the
    registered mark creates a likelihood of confusion with the petitioner's preexisting mark."  *Id.*  By

25  contrast, however, "a petition brought five years after registration (against an incontestable mark) may
    only assert one of several enumerated grounds for cancellation, including genericism, functionality,

26  abandonment, or fraudulent procurement."  *Id.*  As the Ninth Circuit has held, "[n]othing in [section]
    1064 alters the straightforward" statutory application "permit[ting] laches as a defense to cancellation."

27  *Id*. (permitting laches as a defense even if cancellation claim was brought within five years permitted by
    section 1064).  Thus, section 1064 neither dictates the statute of limitations nor prevents the

28  applicability of laches as a defense here.

1 | **B.    Prejudice**

2      Under the second laches prong, a defendant must prove either evidentiary

3 prejudice or expectations-based prejudice. *Danjaq*, 263 F.3d at 955. "Evidentiary

4 prejudice includes such things as lost, stale, or degraded evidence, or witnesses

5 whose memories have faded or who have died." *Id.* (citations omitted). A defendant

6 may demonstrate expectations-based prejudice by showing that it "took actions or

7 suffered consequences that it would not have, had the plaintiff brought suit promptly."

8 *Id.* (citation omitted).

9      Here, Defendant claims they have experienced both types of prejudice. First,

10 Defendant argues that, because of the passage of time, it has been difficult to recover

11 certain email evidence and the memories of some witnesses have faded. (Opp'n &

12 Cross-MSJ at 11–12.) The Court is sympathetic to these evidentiary difficulties.

13 However, it is not clear that this lost or damaged evidence is necessarily due to

14 Plaintiff's delay in filing suit. The Court notes that this case has been pending for over

15 10 years, and some, or all, of the evidentiary issues may spring from that delay as

16 much as or more than Plaintiff's delay. (*See, e.g.*, Def.'s SUF ¶ 11 (Plaintiff's Chairman

17 testifying on October 1, 2024, that "[t]here might have been a communication from

18 Mr. Neil Soni with reference to that. Which we are not able to find out because it is

19 about 15 years old issue.").) "Difficulties caused by the pendency of a lawsuit, and not

20 by delay in bringing the suit do not constitute prejudice within the meaning of the

21 laches doctrine." *Shouse v. Pierce Cnty.*, 559 F.2d 1142, 1147 (9th Cir. 1977); *see also*

22 *Zamora v. Napolitano*, No. 2:09-CV-01292-JAM-EFB, 2009 WL 10692976, at *2 (E.D.

23 Cal. Aug. 6, 2009) ("The doctrine of laches protects against difficulties caused by

24 'unreasonable delay in bringing an action, not against problems created by the

25 pendency of a lawsuit after it is filed.'" (quoting *Boone v. Mech. Specialties Co.*, 609

26 F.2d 956, 958 (9th Cir. 1979)).) Thus, Defendant has not clearly demonstrated

27 evidentiary prejudice due to Plaintiff's delay.

28 ////

Defendant also argues they have experienced economic prejudice because, in reliance on Plaintiff's delay in filing suit, they invested substantial resources in expanding the IDHAYAM business and building the value of that brand.  (Opp'n & Cross-MSJ at 12–13.)  However, as the Ninth Circuit has explained, when laches is presented as a defense to trademark infringement, a finding of expectations-based prejudice requires more than a showing of mere business expenditures.  *Internet Specialties W.*, 559 F.3d at 991–92.  Rather, "[l]aches is meant to protect an infringer whose efforts have been aimed at build[ing] a valuable business around its trademark and an important reliance on the publicity of [its] mark."  *Id.* (citations and quotations omitted).  Proof of efforts to build a valuable business around the mark in question is necessary because "if this prejudice could consist merely of expenditures in promoting the infringed name, then relief would have to be denied in practically every case of delay."  *Id.* at 991 (quoting *Tisch Hotels, Inc. v. Americana Inn, Inc.*, 350 F.2d 609, 615 (7th Cir. 1965)).

Here, while Defendant has provided proof that they invested significant resources in expanding their business before Plaintiff filed suit, they have not shown that they expended significant resources in promoting the IDHAYAM mark and building their business based on public recognition of that mark.  Thus, Defendant has not shown at this stage that their alleged infringement rests on "an investment in the mark [ ] as the identity of the business in the minds of the public."  *Id.* at 992.

In sum, Defendant has not provided sufficient evidence of any prejudice a result of Plaintiff's delay in filing suit.  The Court declines to grant judgment in Defendant's favor on the basis of laches.

## II.    Plaintiff Has Failed to Meet the Summary Judgment Burden on Any of Their Claims

Plaintiff seeks summary judgment on their fraud in the procurement claim, arguing there is no dispute that Gandhi's trademark application for IDHAYAM was prosecuted fraudulently because he knew that Plaintiff had superior rights to the mark.

1  (MSJ at 4–13.)  Plaintiff similarly argues that Defendant is liable for trademark

2  infringement and unfair competition because Plaintiff has clearly demonstrated their

3  priority of use and rights to the IDHAYAM mark, and there is a likelihood of confusion

4  between Plaintiff and Defendant's marks.  (*Id.* at 14–15.)

5       Having reviewed the record, the Court finds that Plaintiff has not sufficiently

6  demonstrated their priority of use in the IDHAYAM mark.  Therefore, as discussed

7  further below, the Court will deny summary judgment on these claims.

8       **A.    Fraud in the Procurement Claim**

9       A party may, in certain circumstances, seek cancellation of a registered

10  trademark on the basis of fraud.  *See* 15 U.S.C. § 1064.  "Fraud in procuring a mark

11  occurs when an applicant knowingly makes false, material representations of fact in

12  connection with an application."  *Quicksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 755

13  (9th Cir. 2006) (quoting *L.D. Kichler Co. v. Davoil, Inc.*, 192 F.3d 1349, 1351 (Fed. Cir.

14  1999)).  To prevail on a theory of fraud, a party must meet the "heavy burden" of

15  proving that (1) the registrant made a false representation regarding a material fact,

16  (2) the registrant knew or believed that the representation was false, (3) the registrant

17  intended to induce reliance on the misrepresentation by the USPTO, (4) the USPTO

18  reasonably relied on the misrepresentation, and (5) the movant suffered damages

19  proximately resulting from the reliance.  *Robi v. Five Platters*, 918 F.2d 1439, 1444 (9th

20  Cir. 1990); *see also Levi Strauss & Co. v. Esprit US Distrib. Ltd.*, 588 F. Supp. 2d 1076,

21  1083–84 (N.D. Cal. 2008).

22       Here, Plaintiff argues that Gandhi, and, by extension Defendant, made false

23  statements of fact when he attested, first in the Intent to Use application for IDHAYAM,

24  and then later in the Statement of Use, that be believed that "no other person, firm,

25  corporation, or association ha[d] the right to use the mark in commerce," that he had a

26  bona fide intent to use the IDHAYAM mark, and that he was "the owner of the

27  trademark/service mark sought to be registered."  (MSJ at 4–13.)  Plaintiff argues these

28  statements were false because, in short, Gandhi was well-aware that IDHAYAM was a

1    popular mark in India but failed to properly investigate use of the mark there,

2    including searching records in the Indian Trademark Office to determine whether

3    IDHAYAM was a mark registered in India for sesame oil.  (*Id.* at 4–6.)  Plaintiff also

4    critiques Defendant's search for use of IDHAYAM in the United States, particularly his

5    failure to uncover the fact that Plaintiff's IDHAYAM sesame oil was already being sold

6    in the United States.  (*Id.* at 6–8.)  Finally, Plaintiff argues that Defendant had no bona

7    fide intent to use the IDHAYAM mark because Plaintiff has a protectable rights in the

8    IDHAYAM mark in India, India and the United States are signatories to treaties that

9    protect Plaintiff's Indian trademark rights, and Defendant imports his sesame oil into

10   the United States from India under the IDHAYAM mark without Plaintiff's consent,

11   which infringes Plaintiff's Indian trademark rights and, by virtue of the treaties, federal

12   law.  (*Id.* at 10–13.)

13         The Court is unpersuaded.  Where, as here, a fraud claim rests on an allegation

14   that an oath in a trademark application was executed fraudulently because of a third

15   party's right to the trademark, knowledge of the third party's "superior or clearly

16   established right" is required.  *Hana Fin., Inc. v. Hana Bank*, 398 F. App'x 257, 259 (9th

17   Cir. 2010) (affirming grant of summary judgment dismissing fraudulent procurement

18   claim).  Plaintiff focuses primarily on the prevalence of the use of IDHAYAM in India, as

19   well as Plaintiff's own protectable interests in the IDHAYAM mark in India, as evidence

20   that Defendant knew or should have known that Plaintiff had priority of use and

21   protectable rights in the IDHAYAM mark in the United States.  However, under the

22   "territoriality principle," it is a "well-established principle of trademark law" that priority

23   of trademark rights in the United States "depends solely upon priority of use in the

24   United States, not on priority of use anywhere in the world."  *Grupo Gigante SA De CV,*

25   *v. Dallo & Co., Inc.*, 391 F.3d 1088, 1093 (9th Cir. 2004) (internal quotation marks and

26   citation omitted).  "Earlier use in another country usually just does not count."  *Id.*  This

27   principle has been described as "'basic to trademark law,' in large part because

28   'trademark rights exist in each country solely according to that country's statutory

16

1  scheme.'"  *Id.*  Thus, the use of IDHAYAM in India and Plaintiff's rights to the IDHAYAM

2  mark in India have no bearing on their rights, if any, to the mark here.[6]

3      Plaintiff argues Defendant's importation and sale of IDHAYAM sesame oil from

4  India violates the Trade-Related Aspects of Intellectual Property Rights ("TRIPS") Treaty

5  and 15 U.S.C. § 1124 because, under section 1124, "[i]t is unlawful for any party to

6  import into the United States of America goods marked with a name of a business

7  entity located in a foreign country that affords similar [intellectual property] privileges

8  to citizen of the United States."  (MSJ at 10–14;) *see also* 15 U.S.C. § 1124 ("[N]o article

9  of imported merchandise which shall copy or simulate the name of . . . any

10  manufacturer or trader located in any foreign country which, by treaty, convention, or

11  law affords similar privileges to citizens of the United States . . . shall be admitted to

12  entry at any customhouse of the United States . . . .").  The TRIPS treaty, to which the

13  United States and India are both parties, provides for such protections, requiring

14  member nations to accord citizens of other member nations trademark rights

15  comparable to those accorded their own citizens.  3 Gilson on Trademarks § 10.06.

16  Thus, Plaintiff contends that Defendant's "manufacturing sesame/gingelly oil in India

17  and marking, in India, with Plaintiffs IDHAYAM trademark constitutes a violation of 15

18  U.S.C. section 1124, [] could never constitute bona fide use for purposes of acquiring

19  rights in the IDHAYAM trademark . . . ."  (MSJ at 12–13.)

20      Plaintiff is mistaken.  15 U.S.C. § 1124 prohibits entry through United States

21  Customs of products in three basic situations: (1) the product bears a "trademark"

22  which copies or simulates a mark on the Principal Register of the Lanham Act; (2) the

23  product bears a "name" which copies or simulates the name of any domestic

24  manufacturer or trader, or of any foreign manufacturer or trader located in a country

25

---

26  [6] *Grupo Gigante* held that an exception to this general rule may apply in narrow circumstances where American consumers are so familiar with a foreign mark that they are likely to believe an entity using the

27  mark in this country is associated with, or is the same as, the foreign trademark holder.  *See* 391 F.3d 1094–98.  This potential exception has no applicability here, as Plaintiff has provided no evidence

28  American consumers would assume that sesame oil sold under the IDHAYAM is associated with them.

which, by treaty, affords similar privileges to citizens of the United States; and (3) the products bears a "name or mark" calculated to induce the public to believe it is manufactured in the United States or that it is manufactured in any foreign country or locality other than the country or locality in which it is actually manufactured. 5 McCarthy on Trademarks and Unfair Competition § 29:37; *see also* 15 U.S.C. § 1124. Here, Plaintiff conflates the standards applicable to names of manufacturers and trademarks. Plaintiff does not claim Defendant uses Plaintiff's name or the name of Plaintiff's sesame oil manufacturer on its products. Rather, Plaintiff contends that Defendant copies its IDHAYAM trademark. However, section 1124 is clear that a trademark must be registered on the Principal Register of the Lanham Act to be protected against unlawful importation. *See Philip Morris U.S.A. Inc. v. Castworld Prods.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003) (an unlawful importation claim under 15 U.S.C. § 1124 requires "proof of importation of merchandise which bears copies or simulations of [] *federally* registered trademarks") (emphasis added); *see also* 15 U.S.C. § 1124 (providing that "no article of imported merchandise . . . which shall copy or simulate a trademark registered in accordance with the provisions of this Act . . . shall be admitted to entry at any customhouse of the United States"). In other words, section 1124 does not provide protections for foreign trademarks that are not registered in the United States. Thus, 15 U.S.C. § 1124 does not support Plaintiff's argument that Defendant did not have a bona fide intent when registering their IDHAYAM mark in the United States. Further, Plaintiff cites no provision in either 15 U.S.C. § 1124 or the TRIPS treaty that contravenes the territoriality principle discussed above. Thus, Plaintiff's reliance on their Indian trademark rights to establish rights in the United States is misplaced.

Plaintiff's remaining evidence is also insufficient to establish Gandhi and, by extension, Defendant, knew of Plaintiff or any other third party's clearly established rights in the United States before filing the trademark application for the IDHAYAM mark. Indeed, the record shows that Gandhi made reasonable inquiries concerning

1  use of the IDHAYAM mark in commerce and searched USPTO records before filing his

2  Intent to Use application.  There is no evidence Gandhi was alerted during this search

3  to Plaintiff's alleged use of the mark.  To the extent Plaintiff wishes to argue their

4  opposition to Gandhi's trademark application was sufficient to provide him notice of

5  their superior rights, courts have made it clear that mere knowledge of a competing

6  use of a mark is insufficient to establish fraudulent intent for a fraud in the

7  procurement claim.  *See Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 755 (9th Cir.

8  2006).  Rather, as explained above, knowledge of clearly established third-party rights

9  must be shown.  Where, as here, Plaintiff abandoned their opposition to the

10 trademark application, there is no indication Gandhi had anything more than

11 knowledge of competing use.  Thus, Plaintiff has failed to meet their burden.

12        In short, there is insufficient evidence Gandhi made any knowing

13 misrepresentation of material fact when prosecuting the trademark application for

14 IDHAYAM.  Accordingly, the Court will deny summary judgment on Plaintiff's fraud in

15 the procurement claim.

16        **B.    Trademark Infringement and Unfair Competition Claims**

17        In addition to the fraudulent procurement claim, Plaintiff brings claims for

18 common law trademark infringement, as well as unfair competition under the Lanham

19 Act and Business and Professions Code section 17200, *et seq.*  To state a claim for

20 common law trademark infringement, as well as unfair competition under the Lanham

21 Act and California law, a plaintiff must allege two elements: (1) that the plaintiff owns a

22 valid and protectible trademark; and (2) that a defendant used, in commerce, a similar

23 mark without authorization in a manner that is likely to cause consumer mistake,

24 confusion, or deception.  *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 929 (9th Cir.

25 2014); *6th St. Partners, LLC v. Priese Bd.*, No. CV 21-6595, 2022 WL 1570630, at *5

26 (C.D. Cal. Mar. 17, 2022); *Novalogic, Inc. v. Activision Blizzard*, 41 F.Supp.3d. 885, 904

27 (C.D. Cal. 2013).  "It is axiomatic that the standard test of ownership is priority of use."

28 *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996).  "To acquire

1    ownership of a trademark it is not enough to have invented the mark first or even to

2    have registered it first; the party claiming ownership must have been the first to

3    actually use the mark in the sale of goods or services." *Id.*  However, federal

4    registration of a mark provides prima facie evidence that the registrant is the owner of

5    the mark.  *Id.*  "Therefore, the registrant is granted a presumption of ownership, dating

6    to the filing date of the application for federal registration, and the challenger must

7    overcome this presumption by a preponderance of the evidence." *Id.* at 1219–20.  A

8    non-registrant rebuts this presumption by showing that they have used the mark in

9    commerce first, thereby invalidating the registration.  *Id.* at 1220.

10            Here, Plaintiff argues they can demonstrate valid ownership rights in the

11   IDHAYAM mark because they own an Indian trademark for IDHAYAM registered in

12   1992 and have been selling sesame oil under the IDHAYAM mark in the United States

13   since 1998 by virtue of their predecessor company.  (MSJ at 14–15.)  The Court

14   disagrees.  Defendant began selling sesame oil in the United States under the

15   IDHAYAM mark in January 2008.[7]  (Def.'s SUF ¶ 3.)  Plaintiff did not obtain their rights

16   in the 063 Registration for IDHAYAM from their predecessor company, V.V.

17   Vanniaperumal & Sons, until sometime between 2008 or 2009.  (Pl.'s SUF ¶ 29.)  Thus,

18   Plaintiff's claim of priority depends on any trademark rights acquired from their

19   predecessor, who allegedly sold sesame oil under the IDHAYAM mark in the United

20   States before 2008.  (*See* Mandel Decl., Ex. 12 (ECF No. 145) (representative invoices

21   showing V.V. Vanniaperumal & Sons' historic sales of IDHAYAM oil).)

22            Even assuming V.V. Vanniaperumal & Sons could establish valid trademark

23   rights in IDHAYAM by virtue of their priority of use, it is disputed whether such rights

24   were then transferred to Plaintiff.  An assignment of a trademark and its accompanying

25   ───────────────

26   [7] Gandhi claimed a first use date of October 27, 2009, in the Statement of Use filed with the USPTO, but
     stated during his deposition he was not sure why that was the first use date when he had been selling

27   sesame oil under the IDHAYAM mark since January 2008.  (Brooks Decl., Ex. 16 (ECF No. 133-2) at
     77:1–25; Mandel Decl., Ex. 7 at 78:1–4.)  Viewing all facts in the light most favorable to Defendant, as

28   the Court must, the Court will assume that Gandhi and, by extension Defendant, began selling sesame
     oil under the IDHAYAM mark in January 2008.

1  goodwill allows the assignee to "step into the shoes" of the assignor and gain any

2  priority the assignor might have in the mark.  *eMachines, Inc. v. Ready Access Memory*,

3  No. EDCV00–00374–VAPEEX, 2001 WL 456404, at *11 (C.D. Cal. Mar. 5, 2001*); see*

4  *also Russell Rd. Food & Bev., LLC v. Spencer*, 829 F.3d 1152, 1156 (9th Cir. 2016).

5  Thus, Plaintiff must prove three elements to establish prior use: (1) their predecessor

6  V.V. Vanniaperumal & Sons possessed valid trademark rights to the IDHAYAM mark in

7  the United States before Plaintiff acquired such rights; (2) the V.V. Vanniaperumal &

8  Sons' United States trademark rights were assigned to Plaintiff, and (3) the goodwill of

9  the Vanniaperumal & Sons' business in the United States was also assigned or

10 transferred.  *See E. & J. Gallo Winery v. Pasatiempos Gallo, S.A.*, 705 F. Supp. 1403,

11 1415 (E.D. Cal. 1994).  While V.V. Vanniaperumal & Sons assigned their Indian

12 trademark rights to Plaintiff sometime between 2008 and 2009, there is no clear

13 evidence this assignment extended to V.V. Vanniaperumal & Sons' United States

14 trademark rights as well.  On its face, the assignment was limited to specified Indian

15 trademark registrations and did not purport to assign any United States trademark

16 rights.  (*See* Mandel Decl., Ex. 11.)  Indeed, Plaintiff's 30(b)(6) witness admitted V.V.

17 Vanniaperumal & Sons never assigned Plaintiff any United States trademark rights.

18 (*See* Brooks Decl., Ex. 13 at 20:19–24.)  Thus, there is a dispute of fact as to whether

19 Plaintiff can claim any United States trademark rights in the IDHAYAM mark before

20 Defendant began selling sesame oil under the IDHAYAM mark in January 2008.

21         Given that Plaintiff has failed to establish priority of use, the Court declines to

22 grant summary judgment on Plaintiff's trademark infringement and unfair competition

23 claims.

24 ////

25 ////

26 ////

27 ////

28 ////

1

**CONCLUSION**

2        In accordance with the above, it is hereby ORDERED Plaintiff's Motion for Partial

3  Summary Judgment (ECF No. 133) is DENIED.  Plaintiff's Request to File Supplemental

4  Opposition (ECF No. 156) is also DENIED.  Finally, Defendant's Cross-Motion for

5  Summary Judgment (ECF No. 146) is DENIED.

6

7        IT IS SO ORDERED.

8  Dated:   **June 3, 2025**

_____
Hon. Daniel J. Calabretta
9                                                                    UNITED STATES DISTRICT JUDGE

10

11  DJC4 – VVV&SonsEdibleOils14cv2961.MSJ

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28